IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERRY DON EVANS | 2:07-cv-01738-ATG (HC) |
| Petitioner, | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |
| vs. | |
| D.K. SISTO, | |
| Respondent. | |

Petitioner Jerry Evans, proceeding pro se, is before this Court on his writ of habeas corpus. Respondent D.K. Sisto filed an answer to Evans' petition ("Answer") on December 3, 2007. Petitioner has filed a Traverse. This Court has jurisdiction under 28 U.S.C. § 2254. For the reasons stated below, the petition is DENIED.

Petitioner is currently confined at the California State Prison at Solano after being sentenced by the Superior Court of Shasta County, CA. After a bench trial, Evans was found guilty, inter alia, of residential burglary, forcible oral copulation, and spousal rape, on October 15, 2003. On December 19, 2003, the court sentenced Evans to 25 years to life in prison. After exhausting his available state court appeals, petitioner then brought this petition. Evans alleges that there was insufficient evidence to support his burglary convictions, that his sentence of 25 years to life violates the Eighth Amendment, and that he was denied effective assistance of counsel. The procedural and factual background, followed by an analysis of each claim, is

presented below.

## PROCEDURAL BACKGROUND

On August 28, 2002, the Shasta County District Attorney's Office charged petitioner with ten counts of violating various sections of the California Penal Code as follows: Counts One and Two, residential burglary in violation of § 459; Count Three, assault with a firearm in violation of § 245(a)(2); Count Four, false imprisonment in violation of § 236; Count Five, criminal threat in violation of § 422, Count Six, kidnapping in violation of § 207; Count Seven, kidnapping for the purpose of spousal rape in violation of § 209(b)(1); Count Eight, spousal rape in violation of § 262(a)(1); Count Nine, forcible oral copulation in violation of § 288a(c)(2); Counts Ten and Eleven, child abuse in violation of § 273a(a); and Count Twelve, damage of a telephone line in violation of § 59. In addition, the Information alleged because of certain special allegations, petitioner was subject to sentencing enhancements mandating a 15-years-to-life and 25-years-to-life sentence for certain counts. Respondent's Lodged Document ("LD") 8 at 4.

On October 6, 2003, petitioner waived his right to a trial by jury. LD 8; Clerk's Transcript ("CT") 66. On October 15, 2003, after a one week trial, the court found Evans guilty on Counts 1-9, not guilty on Counts 10-11, and guilty on Count Twelve. The court found the firearm use enhancements to be true on all counts alleged except Count Three, and the special allegation sentencing enhancements relating to Counts 8-9 to be true. LD 8; CT 374-75.

On December 19, 2003, the court denied petitioner's motion for a new trial and rejected his claim that the proposed sentence constituted cruel and unusual punishment. The court did strike its previous finding that Counts 8-9 were committed in the course of a burglary and that the transportation of the victim substantially increased the risk of harm. LD 8; CT 430-431. Petitioner was sentenced that day to 25 years to life in California state prison. On December 22, 2003, petitioner filed his timely notice of appeal. On June 29, 2005, the Court of Appeal, Third Appellate District, affirmed his conviction. LD 3.

On July 11, 2005, petitioner appealed and filed a petition for review before the California

Supreme Court, claiming that his burglary convictions were not supported by evidence, and his sentence constituted cruel and unusual punishment. LD 4. On September 7, 2005, the California Supreme Court summarily denied his petition. LD 5.

On May 27, 2007, petitioner filed a petition for writ of habeas corpus with the California Supreme Court, claiming ineffective assistance of counsel. LD 6. On August 8, 2007, the California Supreme Court again summarily denied his petition. LD 7. Petitioner exhausted all available state court remedies as to the claims filed in the current petition before this Court.

## FACTUAL BACKGROUND

This court has before it the statement of facts taken from the unpublished opinion of the Third District Court of Appeal (Lodged Doc. 3, dated June 29, 2005), which carries a statutory, rebuttable presumption of correctness. *See* 28 U.S.C. § 2254(e)(1).

The facts, as drawn from the Third District Court of Appeal's opinion ("LD 3"), are as follows. Petitioner and the victim, his wife Sandra Evans, married in September 1997. Their relationship was troubled from the beginning and marked by frequent, violent fights. About six months into the relationship, petitioner began taking medication to treat his bipolar disorder. In April 2002, the victim told petitioner she wanted to end the marriage, and petitioner responded by attempting suicide. He was taken to a hospital and mental health facility. After he was released, he tried contacting the victim for a reconciliation, and threatened suicide again. The victim called 911 and petitioner returned to the mental health facility. The victim subsequently obtained and served a restraining order against petitioner and began divorce proceedings. She also changed the locks on the house, which the victim had previously owned, but had converted to a joint tenancy with petitioner in 1998.

On May 5, 2002, the victim received a phone call, from petitioner, on her cell phone with the caller ID display showing the call was being made from her home phone. She told him to leave the house. When she returned, she found a kitchen knife and knotted towel under the mattress. Several days later, petitioner admitted he had left the items there and planned to tie her up that day.

On May 10, 2002, the victim failed to keep a previously scheduled appointment with

friend Tonya Odell. Odell drove to the victim's house and saw that the door had been kicked in, and victim's two-year-old daughter, Natalee, was walking in the house unattended. The victim's 12-year-old daughter, Kailee, was sleeping and there was a note next to her, written by the victim, directing Kailee to call her grandmother. Odell and a co-worker with her called the police. The incomplete divorce proceedings were still pending.

At trial, the victim testified about the events that occurred the previous evening. Around 2:30 a.m. on May 10, the victim was awakened by petitioner, who was pointing a handgun at her and had rope in his hand. He threatened to kill her and the children if she did not do as he said, and then tied her to the bed, while he was walking around the house drinking and smoking methamphetamine. He talked to victim about killing himself and told her he wanted them to have sex "one last time." Around 5 a.m., he took the victim out of the house because he feared the police would appear. The victim left a note for Kailee and then left with petitioner, fearing for her own and life and that of her children if she didn't.

Petitioner had the victim drive without telling her their destination, and during the trip, he kept his handgun in his lap with the barrel facing up. He told her he wanted to have sex with her and said he would let her go back to her children if she allowed him to. He continued to drink and smoke methamphetamine while in the car. After driving for several hours, they stopped at a hotel in Susanville. Petitioner wrapped the handgun in a blanket and took it upstairs with them, where he and the victim had sex. Petitioner kept the handgun within reach at all times. The victim then asked if she could go home, but petitioner insisted that they stay and talk.

An hour later, they began to drive back to victim's home. Petitioner placed the handgun in the trunk at the victim's request. When they arrived at her home, the police were waiting. The officers searched petitioner's bag, which contained ropes, duct tape, side cutters, a screwdriver, and prescription medication bottles. Officers also found a loaded rifle in petitioner's car trunk, in addition to petitioner's handgun. Police also found that the telephone lines to the house had been unplugged.

Petitioner was interviewed shortly after his arrest. The interview was videotaped and

reviewed by the court during the trial. In the interview, petitioner admitted going to the victim's house at around 1:45 a.m. on May 10 with some rope, a rifle, and a screwdriver. He admitted being angry at the victim and breaking into her home and cutting her phone lines. He also admitted tying the victim up, forcing her to leave the home, and generally confirmed the details of the events that followed as described by the victim. LD 10, Supplemental Clerk's Transcript ("SCT") 40-70.

Petitioner testified on his own behalf, and claimed that he only wanted to talk to the victim, and never would have used the rifle or the handgun. He claimed that he had thought about shooting himself, not the victim. However, he claimed that the sex at the motel was consensual and that he did not force the victim to do anything. LD 9, Reporter's Transcript ("RT") 672-688.

## PETITIONER'S CLAIMS

1. Petitioner claims that there was insufficient evidence to support his convictions for burglary on Counts 1-2. He argues that because he retained some unresolved ownership interest in the victim's house, he could not be properly convicted of burglarizing that residence.

2. Petitioner claims that his sentence of 25 years to life violates the federal constitutional prohibition of cruel and unusual punishment.

3. Petitioner claims that his lawyer was ineffective for failing to try to seek recusal of the trial judge as trier of fact, after both parties had previously agreed to waive the jury in favor of a bench trial. He asserts that because the trial judge had previously ruled on the voluntariness of his confession, the judge was therefore biased.

## STANDARD OF REVIEW

The current Petition was filed after the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 ("AEDPA"), was signed into law and is thus subject to its provisions. See *Lindh v. Murphy*, 521 U.S. 320, 326-327 (1997). The standard of review applicable to Petitioner's claims is set forth in 28 U.S.C. § 2254(d), as amended by the AEDPA:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under the AEDPA, the "clearly established Federal law" that controls federal habeas review of state court judgments consists of holdings (as opposed to dicta) of Supreme Court decisions "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). To determine what, if any, "clearly established" United States Supreme Court law exists, the court may examine decisions other than those of the United States Supreme Court, including Ninth Circuit cases, which "may be persuasive." *Duhaime v. Ducharme*, 200 F.3d 597, 598 (9th Cir.2000) (as amended). On the other hand, a state court's decision cannot be contrary to, or an unreasonable application of, clearly established federal law if no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court. *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir.2004); see also *Carey v. Musladin*, 549 U.S. 70, 76-77 (2006).

A state court decision is "contrary to" clearly established federal law if the decision either applies a rule that contradicts the governing Supreme Court law, or reaches a result that differs from the result the Supreme Court reached on "materially indistinguishable" facts. *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam); *Williams*, 529 U.S. at 405-06. When a state court decision adjudicating a claim is contrary to controlling Supreme Court law, the reviewing federal habeas court is "unconstrained by § 2254(d)(1)." *Williams*, 529 U.S. at 406. However, the state court need not cite to the controlling Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8.

State court decisions which are not "contrary to" Supreme Court law may be set aside on federal habeas review only "if they are not merely erroneous, but 'an unreasonable

application' of clearly established federal law, or are based on 'an unreasonable determination of the facts.' " *Early*, 537 U.S. at 11 (*quoting* 28 U.S.C. § 2254(d)). Consequently, a state court decision that correctly identified the governing legal rule may be rejected if it unreasonably applied the rule to the facts of a particular case. *Williams*, 529 U.S. at 406-10, 413; *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002) (per curiam). However, to obtain federal habeas relief for such an "unreasonable application," a petitioner must show that the state court's application of Supreme Court law was "objectively unreasonable." Woodford, 537 U.S. at 24-25, 27. An "unreasonable application" is different from an "erroneous" or "incorrect" one. *Williams*, 529 U.S. at 409-10; *see also Waddington v. Sarausad*, 129 S.Ct. 823, 831 (2009); *Woodford*, 537 U.S. at 25.

**DISCUSSION**

**I.     Claim One**

In his first claim, petitioner argues that there was insufficient evidence in support of his burglary convictions because he retained a property interest in the victim's home.

*a.     Applicable Federal Laws*

The Due Process Clause of the Fourteenth Amendment protects a criminal defendant from conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). Thus, a state prisoner who alleges that the evidence introduced at trial was insufficient to support the jury's findings states a cognizable federal habeas claim. *Herrera v. Collins*, 506 U.S. 390, 402 (1993). Nevertheless, a federal habeas petitioner "faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." *Juan H.*, 408 F.3d at 1274.

In reviewing an insufficient-evidence claim in habeas proceedings, a federal court must determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979). The *Jackson* standard is applied with specific reference to the applicable state law defining the elements of the crime at issue. *Chein v. Shumsky*, 373 F.3d 978, 983 (9th Cir. 2004) (en banc).

The question on federal habeas review is not whether the court agrees with the fact-finder's conclusions, but only whether those conclusions are within the spectrum of rational results. *Payne v. Borg*, 982 F.2d 335, 338-39 (9th Cir.1992, as amended March 2, 1993). In post-AEDPA cases, where a state court has issued a reasoned decision rejecting a claim of insufficient evidence under a standard that is not "contrary to" *Jackson*, a reviewing federal court applies an additional layer of deference. Thus, the federal court merely inquires "whether a state court determination that the evidence was sufficient to support a conviction was an 'objectively unreasonable' application of *Jackson*." *Id*. at 678 ("We therefore evaluate a state court's resolution of a *Jackson* sufficiency-of-the-evidence claim in all cases under § 2254(d)(1) rather than § 2254(d) (2)[.]"); *see also Williams*, 529 U.S. at 409 (Under 28 U.S.C. § 2254(d)(1), the federal habeas court asks "whether the state court's application of clearly established federal law was objectively unreasonable.").

  *b.* *Analysis*

Here, the state appellate court applied the appropriate federal standard as described in *Jackson* by applying the sufficiency-of-the-evidence review standard found in the California statutes in *People v. Johnson*, 26 Cal.3d 557, 575-58 (1980). The only remaining question, then, is whether the state court's application of the standard was unreasonable. The record reveals that it was not unreasonable for the state court to reject petitioner's claim that he could not be guilty of burglary of his own house.

Since the California Supreme Court summarily denied this claim, this Court looks to the opinion from the California Court of Appeal when assessing whether the state court's decision was unreasonable. In denying this claim, the court of appeal correctly noted that California law holds that an individual may be convicted of burglary of one's own residence if that individual does not have an unconditional possessory right to enter the home. *People v. Pendleton*, 25 Cal.3d 371, 382 (1979). The court of appeal concluded that the prosecution presented substantial evidence that petitioner did not possess an unconditional right to enter the home and the burglary convictions were proper. LD 3 at 11-12. This Court agrees with that conclusion for several reasons.

First, petitioner was subject to a restraining order granted on a motion filed by the victim, and had not received permission from the victim to enter. California courts have previously held that "the court order which temporarily gave [defendant's wife] sole possession denied defendant an unconditional possessory right to enter [the] family residence." *People v. Smith*, 142 Cal.App.4th 923, 931 (2006). Second, the circumstances surrounding petitioner's entry all strongly suggest that petitioner did not - and knew he did not - possess an unconditional right to entry. He entered the home with a screwdriver and damaged the door, and admitted to the victim that he had previously secretly entered the home and left a knife and knotted rope under the bed. LD 3 at 12.

Therefore, the state court properly rejected petitioner's claim of insufficient evidence. The decision is supported by the record and does not constitute an unreasonable application of federal law.

**II.     Claim Two**

Petitioner's second claim alleges that his sentence of 25 years to life violates the federal constitutional prohibition on cruel and unusual punishment because of his lack of a prior record, and the mitigating effect of his history of mental illness, as well as acceptance of responsibility at an early stage of the prosecution.

*I.     Applicable Federal Law*

A criminal sentence that is significantly disproportionate to the crime for which the defendant was convicted violates the Eighth Amendment's prohibition of cruel and unusual punishment. See *Solem v. Helm*, 463 U.S. 277, 303 (1983) (sentence of life imprisonment without possibility of parole for seventh nonviolent felony violates Eighth Amendment). "[O]utside the context of capital punishment, successful challenges to the proportionality of particular sentences will be exceedingly rare." *Id*. at 289-90 (citation and quotation marks omitted). " 'The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are "grossly disproportionate" to the crime.' " *Ewing v. California*, 538 U.S. 11, 23 (2003) (*quoting Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring)). Under this principle, the threshold determination

for the court is whether petitioner's sentence is one of the few cases in which a comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality. *Harmelin*, 501 U.S. at 1005; *Ewing*, 539 U.S. at 30-31 (applying *Harmelin* standard). Only if such an inference arises does the court continue to compare petitioner's sentence with sentences in the same and other jurisdictions. *See Harmelin*, 501 U.S. at 1005; *cf. Ewing*, 538 U.S. at 23. The threshold for an "inference of gross disproportionality" is quite high. *See, e.g.*, *Ewing*, 538 U.S. at 30 (sentence of 25 years to life for conviction of grand theft with prior convictions was not grossly disproportionate); *Lockyer v. Andrade*, 538 U.S. 63 (2003) (upholding two consecutive 25-to-life terms for two convictions of theft of videotapes with prior convictions); *Harmelin*, 501 U.S. at 1008-09 (mandatory sentence of life without possibility of parole for first offense of possession of 672 grams of cocaine did not raise inference of gross disproportionality). *Andrade* and *Ewing* are the Supreme Court's most recent decisions on Eighth Amendment claims regarding prison sentences and both of these cases demonstrate that relief under the Eighth Amendment continues to be reserved for the extreme cases.

        ii.     *Analysis*

Here, the evidence is clear that petitioner's sentence did not violate the federal constitutional prohibition on cruel and unusual punishment. The U.S. Supreme Court has upheld the same sentence on a nonviolent petty theft offense, for a defendant with two prior convictions, in *Ewing*, and a mandatory life sentence without possibility of parole for a first offense of possession of 672 grams of cocaine, in *Harmelin*. Petitioner's sentence of 25 years to life for a forcible sex offense with aggravating factors is a reasonable sentence. Petitioner's crimes were violent in nature and posed a serious danger to the victim and her two minor children, who were left alone in the house in the middle of the night because petitioner forced the victim to leave the house with him. Petitioner also forced the victim to engage in sexual acts in exchange for her return to her children. As the court of appeal observed, all of these facts militate strongly against any finding that the sentence was disproportionate to the crimes committed. Moreover, while petitioner did not have a prior criminal record, that consideration is outweighed by the nature of the crimes. *See People v. Gonzales*, 87 Cal.App.4th 1, 17

(2001). Petitioner's remorse and any mental illness he may have suffered from also fail to compel any finding that his sentence constituted cruel and unusual punishment. *See People v. Estrada*, 57 Cal.App.4th 1270 (1997) (rejecting such claims with similar factual circumstances as in petitioner's case); *People v. Crooks*, 55 Cal.App.4th 797 (1997) (same). Petitioner's demonstrated sociopathic behavior clearly makes his detention reasonable.

Therefore, this Court holds that petitioner's sentence did not violate the federal constitutional prohibition on cruel and unusual punishment and was proportionate to the crimes committed. The state court's conclusion was neither contrary to nor an unreasonable application of clearly established federal law.

## III. Claim Three

Petitioner's third claim contends that his lawyer was ineffective for failing to move to recuse the trial judge as the trier of fact (after the parties agreed to waive the jury trial requirement) because the trial judge had previously ruled on the voluntariness of his confession.

### *I. Applicable Federal Law*

For Petitioner to prevail on his ineffective assistance of counsel claim, he must satisfy a two-prong test: (1) he must show that counsel's performance was deficient, and (2) he must show that he was prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A court evaluating an ineffective assistance of counsel claim need not address both components of the test if the petitioner cannot sufficiently prove one of them. *Strickland*, 466 U.S. at 697; *see also Thomas v. Borg*, 159 F.3d 1147, 1151-52 (9th Cir.1998).
To prove deficient performance, a petitioner must show that counsel's representation fell below an objective standard of reasonableness. *Id.* at 687-88. Because of the difficulty in evaluating counsel's performance, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Only if counsel's acts or omissions, examined in light of all the surrounding circumstances, fell outside this "wide range" of professionally competent assistance, will the petitioner prove deficient performance. *Id.* at 690; *United States v. Quintero-Barraza*, 78 F.3d 1344, 1348 (9th Cir.1995). The petitioner must overcome the presumption that, under the circumstances, the challenged action "might be

considered sound trial strategy." *Strickland*, 466 U.S. at 689.

Establishing that counsel's performance was in some particular way deficient does not warrant setting aside the judgment if the error had no effect on the judgment. *Strickland*, 466 U.S. at 691; *see also Seidel v. Merkle*, 146 F.3d 750, 757 (9th Cir.1998). A petitioner must show a reasonable probability that, but for counsel's unprofessional errors, the result would have been different. *Strickland*, 466 U.S. at 694. Accordingly, petitioner will prevail only if he can prove that counsel's errors caused a "proceeding [that] was fundamentally unfair or unreliable." *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993).

In applying these standards, this Court looks to the last reasoned state court decision. See *Franklin v. Johnson*, 290 F.3d 1223, 1233 n. 3 (9th Cir.2002). "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *see also Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n. 2 (9th Cir.2000) (where California Supreme Court denies review without comment, federal courts "look through" unexplained California Supreme Court decisions to last reasoned decision as basis for state court's judgment). If the state courts reject a defendant's claim in an unexplained disposition, as is the case here, the reviewing court must conduct an independent review to determine whether the decision is contrary to, or involved an unreasonable application of, "clearly established" Supreme Court precedent. *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir.2002) (internal citations omitted); *see also Himes v. Thompson*, 336 F.3d 848, 853-54 (9th Cir.2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853.

ii. Analysis

Since petitioner did not raise this claim before the court of appeal, and the California Supreme Court dismissed it in an unreasoned disposition, this Court must conduct an "independent review" to determine whether the decision was an unreasonable application of federal law.

Petitioner repeatedly cites to *Jackson v. Denno*, 378 U.S. 368 (1964) in support of his claim that he suffered from ineffective assistance of counsel, in violation of *Strickland*, because his counsel failed to move that the judge presiding over his bench trial be recused after that same judge had already ruled on the voluntariness of his confession. However, *Jackson* stands only for the proposition that when a case is tried to a jury, the admissibility of a confession must be ruled on by the trial court. *Id.* at 388-91. When petitioner waived his right to a jury trial, he must have been aware that the judge would be serving as the factfinder, in the jury's place. Indeed, petitioner does not argue to the contrary, or that counsel did not inform him of this fact at the time of waiver. This Court has found no existing case law that suggests counsel was acting unreasonably by failing to make such a motion, and petitioner does not cite to any cases in support of his argument.

Petitioner establishes no prejudice as a result of counsel's failure to make the motion to recuse the judge. Petitioner's confession had been ruled voluntary and admissible. As a result, *any* factfinder in the case - whether the same judge, a jury, or a different judge - would have heard and considered his confession in rendering a verdict. The factfinder also would have heard the victim's testimony, which strongly supported the statements made by petitioner in his confession. Accordingly, this Court rejects petitioner's argument and concludes that petitioner's counsel's actions did not violate the *Strickland* standard.

## CONCLUSION

For the reasons stated above, all of petitioner's arguments are meritless and his petition for a writ of habeas corpus is DENIED.

Dated: March 6, 2009

/s/ Alfred T. Goodwin

_____
ALFRED T. GOODWIN.
United States Circuit Judge
Sitting by designation